SHERMAN & McCABE *vs.* FREAM, survivor. &c.

Where individuals take a steamboat from the general owner, and agree to pay the persons employed in navigating her, and the expenses of running the boat, they are the owners, for the time, and responsible for negligence in her navigation.

So, if they receive the price of passage, freight, &c., and have the direction and control of the boat.

If they, by their contract, charter the boat generally, they are owners, in respect to liability for negligence in running her. If the contract is one of affreightment, merely, they are not such owners.

Where the owner of a steamboat, which is disabled so that she cannot make her trip, hires another boat in her place, to take her tows, freight and passengers to a designated point, the officers and crew of the latter boat remaining in the exclusive control of her, during that trip, and being paid therefor, by her general owner, the contract is not a contract of affreightment.

If the charterers employ the officers and hands, and are legally responsible to them for their wages, the charterers have the control of the steamboat, and are liable as owners, &c. in the absence of evidence of some special arrangement securing the boat to others.

In case of a collision, the crew of the injured vessel are not bound to remain on board, unless it is entirely plain that they can do so with safety, and there is good reason to suppose the vessel can be saved. If such circumstances exist, however, leaving the vessel is gross negligence.

Unless such crew grossly err in judgment, in abandoning the injured vessel soon after the collision, the owners of the vessel in fault will not be thereby exonerated from liability for the loss occasioned by the collision.

APPEAL from a judgment entered on the verdict of a jury, after a trial at the circuit. The action was brought to recover the damages sustained by the plaintiffs by reason of a collision, on the Hudson river, between the steamboat Delaware and a sloop, the cargo of which was owned by the plaintiffs. The sloop was sunk, by the collision, and the cargo of bricks lost. As soon as the sloop struck, her crew, without waiting to ascertain the injury, in alarm jumped on board the steamer, and remained there. The sloop, after the desertion by her crew, remained afloat from 20 to 30 minutes before she sunk. The defendants insisted that if the crew had not abandoned her, she could have been run ashore on the mud flats, and saved, with her cargo. The steamer Delaware was

then owned by Reuben Smith, who appointed and paid her officers and crew for that voyage. The defendants Fream and Mabey then owned the steamer Robert L. Stevens, which, being disabled, the Delaware was hired in her place to take her tows, freight and passengers to Saugerties. The officers and crew of the Delaware remained in exclusive control on that trip, and were paid therefor by Smith.

At the close of the testimony, the justice charged the jury that two general questions were submitted to them:

*First.* Did the injury alleged arise from negligence or misconduct on the part of those navigating the steamboat?

*Second.* Were the defendants responsible for such negligence or misconduct, if it existed? That two persons cannot be responsible at the same time; it must be either the general owner or the charterer, the one or the other, and not both. And whether it be the one or the other, depends on which had the control of the steamboat at the time of the injury. If Smith, the general owner, then had the control, he was responsible. If Fream, the charterer, on the other hand, had that control, then he was responsible. That in order to recover, the plaintiff must prove that the defendants were the owners at the time of the injury, or, in other words, that they then had such control and management of the steamboat Delaware, so as to constitute them owners for the time being. That if the defendants took such steamboat from the general owner at a fixed price for the boat, and employed and agreed to pay the persons engaged in navigating her, and the expenses of running the boat, they were the owners for the time, and were responsible for the injury, if occasioned by negligence or misconduct in the navigation of the steamboat. To which the counsel for the defendants excepted. The judge further charged the jury, that if the defendants received the price of passage, freight and towage, for that trip, and had the direction and control of the vessel, they were thereby in judgment of law owners of the Delaware for that trip, and responsible in this action. That if the contract between the parties

for the use of the steamboat was a charter of the boat, the defendants were owners; if a contract of affreightment merely, they were not owners. That it was clear that the contract in question was not a contract of affreightment. That if the defendants employed the officers and hands, and were legally responsible to them for their wages, then the defendants had the control of the steamboat, and were liable as owners; and this was a question submitted to the jury for their determination. To these portions of the charge the counsel for the defendants also excepted. The counsel for the defendants requested his honor to charge the jury as follows: That if the defendants hired the Delaware, with her officers and men, and were responsible to the general owner for the pay of her officers and men, and not to those officers and men themselves, the steamboat was so under the control of the general owner, and he alone was responsible for the misconduct of her crew. But the judge refused so to charge, or to charge otherwise than he had already charged; to which refusal the counsel for the defendants excepted. The judge further charged, that it would be holding the crew of the sloop to too rigid a rule, to require them to judge, under such circumstances as are here presented, whether there was danger in remaining on board of the sloop to take care of her, and hold them responsible for an error in such a judgment. They must have been guilty of gross error in their judgment, and a gross mistake in abandoning her, in order to visit the loss upon the owners. To this part of the charge the defendants' counsel also excepted. The jury found a verdict for the plaintiffs for the full amount claimed, being the sum of $489.50; and thereupon the presiding justice ordered that judgment should be entered on such verdict, but that all other proceedings of the plaintiffs should be stayed, with time for the defendants to make and serve a case and exceptions; and further ordered, that such case and exceptions should be heard in the first instance, on appeal from such judgment, at the general term.

Sherman *v.* Fream.

*Robert Dodge,* for the appellant.

*James M. Smith,* for the respondents.

*By the Court,* T. R. STRONG, J. The questions of fact in this case must, on the appeal, be regarded as settled by the verdict. An appeal upon the facts lies only when the trial was by the court or referees, and not when the trial was, as in this case, by jury.

I think the objection to the question to the witness McAllister was properly sustained. It was not a question in the case whether generally, in case of danger to a vessel of collision with a steamboat, which could be avoided by luffing, it would be proper for the vessel to keep her course or luff. Besides, the law determines what is proper in such cases, and it is not a subject of inquiry by evidence. The inquiry should have been, what would have been proper under such circumstances as were disclosed in the case ?

None of the exceptions to the charge are, in my opinion, well taken.

If the defendants took the steamboat from the general owner, and agreed to pay the persons employed in navigating her, and the expenses of running the boat, they were the owners for the time, and responsible for negligence in her navigation.

So, if they received the price of passage, freight, &c., and had the direction and control of the boat.

If the defendants by their contract chartered the boat generally, they were owners in respect to liability for negligence in running her.

If the contract was one of affreightment merely, they were not such owners.

The evidence, I think, warranted the opinion expressed by the judge, that the contract was not a contract of affreightment. It cannot be insisted that this question should have been submitted to the jury, as that was not requested at the trial.

Sherman *v.* Fream.

If the defendants employed the officers and hands, and were legally responsible to them for their wages, the defendants had the control of the steamboat, and were liable as owners, &c., in the absence of evidence of some special arrangement securing the control of the boat to others, and there is no such evidence in the case.

Unless the crew of the vessel struck by the steamboat grossly erred in judgment in leaving her soon after the collision, I think the defendants are not thereby exonerated from liability for the entire loss, although the vessel floated thirty or forty minutes after the collision, before it sunk, and might have been run on shore. The crew were not bound to remain on the vessel unless it was entirely plain they could do so with safety, and there was good reason to suppose the vessel could be saved. If such circumstances existed, leaving the vessel was gross negligence.

The request to charge was, I think, properly declined. It would not follow, if the defendants hired the steamboat, and were responsible to the general owner for the pay of the officers and men, and not to the officers and men themselves, that the general owner had the control of the boat. If such was the contract, the defendants might have taken and retained such control, and there is evidence tending to prove that they did so.

My conclusion is that the judgment should be affirmed.

Judgment affirmed.

[NEW YORK GENERAL TERM, December 23, 1859. *Roosevelt, T. R. Strong* and *Sutherland,* Justices.]